Rexford M. ELDER, Individually, d/b/a C & R Consultants, Appellant (Defendant and Cross-Defendant),

v.

Walter V. JONES, an Individual, owner and operator of Jones Development Company; and Jones Development Company, Appellees (Defendants and Cross-Complainants).

No. 5160.

Supreme Court of Wyoming.

March 14, 1980.

K. W. Keldsen, Rawlins, for appellant.

Gerald K. Russell, Rawlins, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The appellant, Rexford M. Elder, appeals from a judgment of the district court which found that he and his business associate, A. M. "Cy" Harris,[1] breached their contract with the appellee, Walter V. Jones. The judgment awarded appellee damages of $14,993.15. The appellant asserts a number of errors which we shall summarize as follows:

1. The district court erred in permitting the appellee to amend his pleadings to include a theory of breach of contract at the opening of the trial. Rule 15(b), W.R.C.P.[2] Further, the district court erred in failing to grant a continuance in face of the amendment.

2. The doctrine of subrogation could not be applied in this case because there were no contractual obligations running between the appellant and the appellee's subrogors.

3. The arrangements between the parties were too indefinite to constitute an enforceable contract. Moreover, if there was a contract, it was abandoned.

4. The appellee did not sustain his burden of proving that he had demanded performance from the appellant, a condition precedent to this suit.

5. The district court erred in refusing to grant a continuance to appellant for the purpose of deposing A. M. Harris (See fn. 1, supra).

6. Appellee failed to prove any damages under a breach-of-contract theory.

7. The district court committed reversible error in admitting certain items of evidence.

It was difficult to determine from the briefs the facts and true issues of this case. Although there were a number of persons and business organizations involved in the circumstances which led to this litigation, the legal principles which governed the outcome of the lawsuit were simple, once the debris was cleared away.

This case got underway when, on January 28, 1977, Colorado Lumber & Supply Co., Inc. (Colorado Lumber), filed suit to foreclose a materialman's lien[3] on a house owned by the appellee.[4] Appellee had made

---

1. Harris was apparently terminally ill with cancer at the time of the trial in the district court. He did not make any personal appearance at the trial although he was represented in the trial court either pro se or by attorney on the pleadings and by attorney at the trial. He did not join in this appeal.

2. Rule 15(b), W.R.C.P.:

"(b) *Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment."

3. See §§ 29–2–101, et seq., W.S.1977.

4. The appellee was sued as an individual as well as d/b/a Jones Development Company.

an agreement with the appellant[5] which provided that appellant would build for appellee a home in a housing development in Hanna, Wyoming which was being developed by the appellee. Appellant in turn hired J. L. Wilson (Wilson) to do the actual building of the house. Wilson purchased the materials to build the home from Colorado Lumber. In its lien foreclosure complaint, Colorado Lumber named the appellant, the appellee, and Wilson as defendants. The complaint alleged that appellant, as a contractor, had entered into a contract to build a house for appellee. Appellant then subcontracted with Wilson who was to do the actual construction work. Wilson purchased, and agreed to pay for, the building materials which were supplied by Colorado Lumber and incorporated into the house at Hanna. Colorado Lumber claimed it had not been paid for materials which were valued at $5,046.93. Appellee filed a cross complaint against the appellant asking that any sums that had to be paid by appellee to Colorado Lumber be reimbursed to him by appellant and Wilson. Further, appellee wanted the appellant to defend the lawsuit; and, if appellant failed to do so, that he be required to pay all attorney fees incurred by appellee.

Wilson also got into the action, filing a third-party complaint against both the appellant and appellee. Wilson claimed he had not been paid for materials and labor he provided to the project of building the home. His suit was also to foreclose a lien on the same home which Colorado Lumber had filed on. (See fn. 3, supra). His claim was for over $17,000. Appellee then filed another cross complaint against the appellant asking to be reimbursed by the appellant for any sums he might have to pay Wilson.

In a document dated December 22, 1977, Wilson released his lien against the appellee for a consideration of $15,000 plus $2,000 in supplies that were owned by appellee but retained by Wilson. This, in effect, removed Wilson from this litigation. On February 8, 1978, Colorado Lumber released its lien against appellee and Wilson and assigned and subrogated its rights in the lawsuit to them. This, then, also removed Colorado Lumber from this litigation.

For convenience, the district court referred to the appellee as plaintiff and the appellant as defendant in the pretrial order which was filed on July 6, 1978. Once all the deadwood is cleared away, those are exactly the positions in which they stood. Nonetheless, the parties persisted in using the more complex titles of cross-complainant and cross-defendant. That pretrial order listed the issues for trial to be:

"1. Is the document entitled 'Proposal,' dated March 2, 1976, a legal contract?

"2. If the 'Proposal' is a legal contract, was there a breach thereof?

"3. Was there a sub-contract for construction between J. L. 'Jack' Wilson, d/b/a Beaver Interstate Builders, a/k/a Beaver Builders, an individual, and the defendant?

"4. Is defendant liable to the plaintiff for sums paid to Beaver Builders and Colorado Lumber & Supply Co., Inc., by plaintiff?

"5. Is defendant liable to plaintiff for damages and attorney's fees under Section 29-2-115, W.S., 1977?[6]

"6. Can defendant claim unjust enrichment against the plaintiff if defendant is liable to the plaintiff?"

The pretrial order also permitted appellee to file an amended complaint within ten days. An amended complaint was filed on July 17, 1978. That complaint asked for a judgment against the appellant for $15,000.

On August 11, 1978, the appellant filed an answer to the amended complaint which, among other things, stated:

5. The judgment is against Elder, Harris and C & R Consultants, Inc. Both Elder and C & R Consultants, Inc., are appellants; but, for convenience, we shall refer to them collectively as appellant.

6. Eventually the appellee entirely dropped his ·claim for attorney fees.

"8. If there was a contract between the Cross-Complainant and the Cross-Defendants, that the Cross-Complainant breached such contract and that there was non-performance under the contract and, therefore, no liability."

At the trial, in the opening proceedings, appellee moved for permission to amend his pleadings to conform to the evidence. A couple of excerpts from the record help to clarify the situation:

"MR. RUSSELL: Yes, sir. We had a contract with C and R Consultants, that C and R Consultants breached that contract, that as a result thereof liens were filed, that we settled in the amount of $15,000.00, fifteen thousand over and above the original contract price, and anything that we had to pay in order to release these liens C and R Consultants is liable to us for. Now, that's what it boils down to in a nutshell.

"MR. KELDSEN: If the Court please, it was only—what bothers me is that he is talking about breach of contract and indemnification in the same breath, and it bothers me. I would have an objection, your Honor. He's had plenty of time to amend their pleadings. There's been an amended pleading here already in order to show the subrogation, and now he comes in on a breach of contract theory, and that makes it an entirely different ball game, and we should have the opportunity to see exactly what he's pleading in writing and an opportunity to respond thereto."

The court then ruled:

"THE COURT: Well, be that as it may, under Rule 15 A he has the privilege of offering such proof, and that proof, incidently, would be in conformity of your theory of the case. In other words, he must first of all establish that C and R was a contractor. Your proof, your burden is to show that he was not a contractor, and the theory is very much in conformity with the issues as have been framed in this particular case. Under Rule 15 A he has the privilege. The Court will reserve ruling on the motion until the conclusion of trial to determine whether the proof is, in fact, in conformity with the pleadings, at which time under such circumstances it would be granted."

 Appellant asserts the district court erred in allowing an amendment to the pleadings. Appellant's brief and oral arguments failed to take into account the well-developed body of case authority construing Rule 15, W.R.C.P.:

" * * * The decision to allow amendment to pleadings is vested within the sound discretion of the district court, when justice requires, and therefore subject to reversal on appeal only for an abuse of that discretion. *Breazeale v. Radich*, Wyo.1972, 500 P.2d 74. In determining the propriety of an amendment subject to this standard of review, the basic guideline to be followed is whether or not the allowance of the amendment prejudiced the adverse party. *Beaudoin v. Taylor*, Wyo.1972, 492 P.2d 966." *Rose v. Rose*, Wyo.1978, 576 P.2d 458, 459.

Here, the appellant merely states his conclusion that the district court abused its discretion, nothing more. We cannot find abuse because appellant has failed his burden. We digress to point out that it is apparent that no one was looking to the pretrial order [7] for any guidance. That doc-

---

7. Rule 16, W.R.C.P.:

"In any action, the court may in its discretion, and upon request of any party shall, direct the attorneys for the parties to appear before it for a conference to consider:

"(1) The simplification of the issues;

"(2) The necessity or desirability of amendments to the pleadings;

"(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

"(4) The limitation of the number of expert witnesses;

"(5) The advsiability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;

"(6) Such other matters as may aid in the disposition of the action.

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and

ument stated rather plainly that breach of contract was an issue. The upshot of that is, of course, that had appellant recognized what his burden was in this court it would have been virtually impossible to demonstrate an abuse. Appellant likewise failed to demonstrate any abuse of discretion with regard to the district court not allowing a continuance. *Craver v. Craver*, Wyo.1979, 601 P.2d 999. Indeed, as a part of his answer, appellant had claimed appellee had breached the contract.

■ Appellant asserts that the doctrine of subrogation could not be applied in this case. This issue apparently rests on the appellant's success in convincing this court that the amendment discussed above should

> the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The

not have been allowed. The judgment of the district court is, quite properly, based on the theory of breach of contract and does not depend upon subrogation. The district court found that appellant agreed to build a house for the appellee for a price of $30,750 ([sic]—contract price was $30,735). The house cost appellee, according to the district court's findings, $14,993.15 more than the agreed contract price. This was breach of contract and subrogations play no part. There is no need to further discuss the issue.

■ Appellant asserts that the agreement between the parties was too indefinite to constitute an enforceable contract. We shall set the document out in its entirety:

> court in its discretion may establish by rule a pretrial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to nonjury actions or extend it to all actions."

**Proposal** *1

| | |
|---|---|
| Proposal No. # 1 | |
| Sheet No. 143 | |
| Date 3/2/76 | |

**FROM**
C. & R Consultants
129 South Lowell Blvd.
Denver, Colorado 80219

| Proposal Submitted To | Work To Be Performed At |
|---|---|
| Name: Jones Development | Street: Fossil C. Rt. |
| Street: Box 543 | City: Hanna State: Wyo. |
| City: Hanna | Date of Plans: 2/17/76 |
| State: Wyoming | Architect: Merrick Engineers & Architects |
| Telephone Number: | |

We hereby propose to furnish all the materials and perform all the labor necessary for the completion of
Construction of a two story house (Model B 2) for Jones Development in subdivisions Block #2 Lot # 39 in Hanna Wyoming in accordance with the blue-print and specifications supmitted. This proposal covers all cost of labor and material, state & local taxes and appliance, carpeting as specified by the purchaser. This proposal becomes a contract on your approval for us to complete the house as specified in a turnkey manner and is subject to inspection at any time during construction. Exterior utilities are not a part of this contract.

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of
Thirty thousand seven hundred & thirty five ***********Dollars ($ 30,735.00 ).
with payments to be made as follows $1,500.00 down & Eight thousand seven hundred forty five in escrow @ Ten thousand two hundred forty five on rough in weather tight @ Ten thousand two hundred forty five upon completion.

Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance upon above work. Workmen's Compensation and Public Liability Insurance on above work to be taken out by Contractor

NOTE:
Received $500.00 deposit 3/2/76
@$1,000.00 due on signing of proposal
@$8,745.00 in escrow on 1st phase
Note 2 Exhibit A attached

Respectfully submitted C. & R Consultants
Per A. M. Harris
R. M. Elder

Note This proposal may be withdrawn by us if not accepted within 20 days

**ACCEPTANCE OF PROPOSAL**
The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Accepted_____ Signature_____
Date_____ Signature_____

TOPS FORM 3450 LITHO IN U. S. A.

[* We include this contract only for the purpose of demonstrating its content. By including we do not recommend that such a contract be used or that in any other factual context it would necessarily be viewed as an enforceable contract.]

The district court determined this was a contract. Based on the document above, as well as all the other evidence presented at trial, we can only conclude that the district court properly determined that an enforceable contract was formed between the parties. We point out that appellant presented this court with absolutely nothing in his brief or oral argument to demonstrate that the relationship between these parties was not a contractual one. What his brief and argument boil down to is a mere assertion that the "proposal" is not a contract with a citation to Am.Jur.2d that a contract must be definite. The appellant seriously misunderstands his burden in this court. An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case. We hold that, as a matter of law, the district court properly found the "proposal" was an enforceable contract.

The appellant asserts that appellee failed to demand that appellants perform their contractual obligations. Further, appellant asserts that appellee failed to perform his part of the contract, specifically he failed to comply with the escrow provisions, failed to sign the builders contract with plans and specifications, and paid money directly to Wilson in violation of the contract provision. As to these asserted failures of appellee to perform his end of the contract, it is sufficient for this court to point out that these were contested facts and were resolved against appellant. We do not substitute our judgment for that of the trial court where there is evidence to support the trial court's determination. *True v. Hi-Plains Elevator Machinery, Inc.,* Wyo.1978, 577 P.2d 991. Moreover, these issues are presented here in a considerably different light than in the trial court. We do not address questions raised for the first time on appeal. *Scherling v. Kilgore,* Wyo. 1979, 599 P.2d 1352, 1358. It is a basic premise of appellate practice that to pre-serve an issue for appeal, that issue must be called to the attention of the trial court in a clear manner. As to a major portion of these arguments, appellant provides us with very little relevant authority and even less cogent argument. Where an appellant asserts errors but cites no authority and makes only a perfunctory argument in support of the contention, this court will not consider the contention. *Scherling v. Kilgore,* supra, 599 P.2d at 1359.

At the very end of the trial appellant sought a continuance in order to depose one of his own clients, A. M. Harris (see fn. 1, supra). Although it is bewildering that appellant would seriously present such an issue, it is enough to say that appellant presented no authority or cogent argument in support of this contention of error. Finally, the appellant asserts the appellee failed to prove any damage under a breach-of-contract theory and that certain items of evidence were improperly admitted by the court. Once again, no authority or cogent argument appear in the brief to support these issues. We do not consider contentions unsupported by cogent argument or authority. *Scherling v. Kilgore,* supra.

Affirmed.

McCLINTOCK, J., concurs in the result.